[L. A. No. 3765.   Department One.—November 17, 1916.]

## IMPERIAL LAND COMPANY (a Corporation), et al., Appellants, v. IMPERIAL IRRIGATION DISTRICT et al., Respondents.

IRRIGATION DISTRICT—IRREGULARITIES IN ASSESSMENT—ACTION TO DETERMINE VALIDITY OF ASSESSMENT.—A land owner in an irrigation district organized under the act of March 31, 1897, commonly known as the Bridgford Act, may not attack the validity of an assessment for mere irregularities not infringing his constitutional rights nor for failure to comply with statutory requirements which the legislature might in the first instance have dispensed with, except in an action to determine the validity of the assessment, commenced within thirty days after its levy, as provided in sections 68 to 72 of that act.

ID.—JURISDICTIONAL STEPS—FAILURE TO OBSERVE—CURATIVE ACT.—The power to levy an assessment or impose a liability on private property is derived solely from the statute, and must be exercised in the manner laid down in the statute.   In this sense, the jurisdiction of the board extends only to its right to act in the manner prescribed by the statute.   But with respect to any steps which are not constitutionally necessary, the legislature may, in the very act which requires these "jurisdictional" steps to be taken, declare that unless objection is made at a certain time or in a certain way, a failure to take these steps shall not affect the validity of the proceedings.

ID.—CALL FOR SPECIAL MEETING OF DIRECTORS—RECITAL IN MINUTES.—A recital in the minutes of a special meeting of the directors of the district stating that the meeting was called by order of all the board to set the rate of taxes for the assessment for a given year, is a sufficient compliance with the requirement of section 14 of the act that such order "must be entered of record."

ID.—IRREGULARITIES IN ENTERING CALL—FAILURE TO BRING ACTION IN TIME LIMITED.—The failure to enter the call in full in the minutes is at most a mere irregularity, which would be cured by the failure of an assessment payer to bring his action within the thirty days.

The statute does not require that the order for the meeting shall be entered of record five days before the meeting.

ID.—IRREGULARITIES IN MAKING ESTIMATES AS TO AMOUNT OF ASSESSMENT.—Section 59 of the act, as amended in 1911, authorizes the board of directors to levy an assessment in the amount limited thereby for the general purposes of the district, and the failure to observe requirements of the act that the resolution levying the assessment must be preceded by an estimate and determination of the amount of money necessary to be raised, and must specify the amount and the purpose for which it is intended to be used, is an irregularity which cannot be availed of by an assessment payer who has failed to bring his action within the period of thirty days limited by section 69 of the act.

ID.—LEVY OF ASSESSMENT BY MOTION INSTEAD OF BY RESOLUTION.—The fact that the assessment was levied by a mere motion rather than by a resolution is also an irregularity, and is not available to an assessment payer who fails to bring his action within such period.

ID.—ENJOINING ENFORCEMENT OF ASSESSMENT—OFFER TO PAY AMOUNT DUE.—A property owner cannot maintain an action to enjoin the sale of his land for nonpayment of such a valid assessment, on account of irregularities in the proceedings had after the levy looking to the collections of the assessment, without first paying or offering to pay the amount justly due.

APPEAL from a judgment of the Superior Court of Imperial County, and from an order refusing a new trial.  F. J. Cole, Judge.

The facts are stated in the opinion of the court.

Valentine & Newby, for Appellants.

A. Haines, Haines & Haines, and R. D. McPherrin, for Respondents.

SLOSS, J.—The plaintiffs, owners of land within the boundaries of Imperial Irrigation District, brought this action against the district and its officers to obtain an injunction restraining the sale of the property of plaintiffs for nonpayment of an assessment attempted to be levied by the district for the year 1912, and for a decree annulling said assessment.  Judgment went for the defendants, and plaintiffs appeal from such judgment and from an order denying their motion for a new trial.

Imperial Irrigation District was organized in December, 1911, under the act approved March 31, 1897 (commonly known as the Bridgford Act), and amendments thereto. (Stats. 1897, p. 254.) The assessment herein attacked was levied on August 2, 1912, and was an assessment of seven mills ($0.007) upon each dollar of assessed value of real property within the district. The present action was commenced on August 16, 1913, something more than a year after the levy of the assessment. The plaintiffs and appellants rely upon various asserted defects in the proceedings both before and after the levy of the assessment. With respect to everything taking place up to the date of the assessment (August 2, 1912), the defendants set up in their answer the limitations contained in sections 68, 69, 70, 71, and 72 of the statute. Section 68 authorizes the board of directors of the district to bring an action in the superior court to determine the validity of any bonds issued or assessments levied. Section 69 provides that if no such proceeding shall have been brought, then "at any time within thirty days after the levy of any assessment or issue of any bonds under the provisions of this act, any district assessment payer may bring an action in the superior court in the county where the office of the board of directors is located, to determine the validity of any such assessment or such bonds." Section 70 provides for the consolidation of contests; section 71 for the manner of disposing of such contests. Section 72 declares that "no contest of anything or matter herein provided shall be made other than within the time and manner herein specified. . . ." The court below, after finding that this action was commenced more than thirty days after the date of the levy of the assessment, drew as one of its conclusions of law "that said suit is barred as to all attack upon said assessment by the provisions of sections 69, 70, 71, and 72 of the Irrigation District Act."

Sections 69 and 72 create a particular action as the sole mode by which a land owner may attack the validity of an assessment, and enact a period of limitation for such action. These provisions are not analogous to those of the street law giving an appeal to the city council (Stats. 1885, p. 147). The decision of the council is made conclusive only upon "errors, informalities and irregularities which said city council might have remedied and avoided." Where the contract is void in its inception, the owner is not, therefore,

required to appeal to the council. (*Manning* v. *Den,* 90 Cal.
610, [27 Pac. 435]; *McBean* v. *Redick,* 96 Cal. 191, [31 Pac.
7]; *Chase* v. *City Treasurer,* 122 Cal. 540, [55 Pac. 414].)
But the proceeding authorized by the Bridgford Act is
brought in a court of general jurisdiction, which has full
power to pass upon any question touching the substantial
rights of the parties, and the grounds of attack which may be
made upon the levy in such proceeding are in no way limited.
It may be that the provisions under discussion would not
bar an action directed against the pretended levy of an assess-
ment by a body which had no legal existence or had no power,
by any kind of proceeding, to levy the assessment.   But we
think they must certainly be operative to foreclose an attack
based upon mere irregularities, or upon the failure to com-
ply with statutory requirements which the legislature might
in the first instance, have failed to enact.   In this respect, the
effect of the statute is at least as strong as is the provision of
the Street Bond Act (Stats. 1893, p. 33), declaring that the
bonds issued under the act shall be conclusive evidence of all
proceedings previous to the making of the certified list of all
assessments unpaid.   This provision received careful consid-
eration at the hands of this court in *Chase* v. *Trout,* 146 Cal.
350, [80 Pac. 81]; see, also, *Baird* v. *Monroe,* 150 Cal. 568,
[89 Pac. 352]; *Board of Education* v. *Hyatt,* 152 Cal. 515,
519, [93 Pac. 117]; *Wilcox* v. *Engebretsen,* 160 Cal. 292, [116
Pac. 750]; *Schaffer* v. *Smith,* 169 Cal. 764, 771, [147 Pac. 976].
The conclusion reached was, as above indicated, that a cura-
tive act, or a clause making bonds conclusive evidence of the
regularity of prior proceedings, was operative so far as to
cure a failure to comply with any step which the legislature
might originally have omitted from the requirements of the
statute.   In any proceeding designed to subject the property
of an individual to the burden of tax or assessment, certain
elements are essential to constitute compliance with the man-
dates of the state or federal constitutions.   It is agreed on
all hands that no curative act can deprive a property owner
of the right to resist a pretended assessment which, if en-
forced, would deprive him of his property without due process
of law or otherwise infringe his constitutional rights.   But
short of this, there is no more reason for denying to the stat-
ute before us than to that involved in *Chase* v. *Trout,* 146
Cal. 350, [80 Pac. 81], the effect of foreclosing any attack

based upon the failure to pursue regularly or at all those steps which the legislature was not bound to make a part of the statutory procedure. As is pointed out in *Chase* v. *Trout, supra*, the applicability of curative statutes is not to be determined solely by inquiring whether the steps omitted or defectively performed were "jurisdictional." The term "jurisdictional" has been used in various senses. The power to levy an assessment or impose a liability on private property is derived solely from the statute, and must be exercised in the manner laid down in the statute. In this sense, the jurisdiction of the board extends only to its right to act in the manner prescribed by the legislature. But with respect to any steps which are not constitutionally necessary, the legislature may, in the very act which requires these "jurisdictional" steps to be taken, declare that unless objection is made at a certain time or in a certain way, a failure to take these steps shall not affect the validity of the proceeding. This is the plain meaning of the holding in *Chase* v. *Trout, supra*, and we do not doubt that it is equally applicable here.

The objections urged by the appellant to the assessment all fall within the character of irregularities not affecting the constitutional rights of the assessment payer, and therefore not beyond the remedial power of a curative clause or a statutory limitation like that contained in the Bridgford Act.

1. The assessment was levied at a special meeting. Section 14 of the act provides that special meetings "must be ordered by a majority of the board. The order must be entered of record, and five days' notice thereof must, by the secretary, be given to each member not joining in the order." It also provides that the order must specify the business to be transacted. The complaint alleges that the call or order for said meeting was not entered upon the minutes of the board, and the purpose of the said call was not specified therein. The answer, while not as specific and direct as it might have been, did, we think, contain a sufficient traverse of the material portions of these allegations. It appeared that the minutes of the special meeting of August 2, 1912, stated that said meeting was called by order of all the board to set the rate of taxes for the assessment of 1912–13. We think this was a sufficient compliance with the requirement that "the order must be entered of record." The record, i. e., the minutes of the board, contain an entry of the fact that all the members

of the board had ordered a special meeting at a given time
for the purpose of setting "the rate of taxes for the assess-
ment of 1912–13." It is true that the order made by the
directors was not entered *in haec verba* in the record, but the
substance thereof was so recorded and this, we think, was
sufficient. There is no claim that the directors did not in
fact unite in making an order for a special meeting for the
purposes named. This was sufficient to vest in the board the
power to levy an assessment authorized by the statute. The
failure to enter the call in full in the minutes is at most a
mere irregularity, which would be cured by the failure of an
assessment payer to bring his action within thirty days. We
find nothing in the statute which requires that the order for
meeting shall be entered of record "five days before the meet-
ing." All that is required is that the order shall be entered,
and that five days' notice shall be given to members not join-
ing in the order. No notice was required here, since all the
members joined in the order. The statute does not prescribe
the time when the order must be entered, and it would seem
that the appropriate place for such entry would be in the
minutes of the meeting held pursuant to the order.

2. It is claimed that the board had no authority to levy
an assessment except by resolution specifying the amount of
money proposed to be raised and the purpose for which it
is intended to be used. Section 39 of the act provides for the
levy of an assessment sufficient to raise interest on outstand-
ing bonds, sums due or to become due on account of rentals
or charges for lands or water rights acquired by the district,
or to pay contracts or obligations which have been reduced
to judgment. The complaint alleges, and it is not denied,
that the district had not on August 2, 1912, any obligations
falling within these classes. The assessment was not, there-
fore, authorized by section 39. But section 59 authorizes the
board to call a special election for submission of the question
whether or not a special assessment shall be levied "for the
purpose of raising money to be applied to any of the pur-
poses provided in this act." Among such purposes are the
necessary expenses of conducting the district, including the
payment of salaries of officers and employees. Section 59, as
originally enacted, made an election a prerequisite to the levy
of any assessment thereunder. In 1911 the section was
amended by the adoption of the following proviso: "Pro-

vided, however, that an assessment of not to exceed two per centum of the value of the assessable property within the district may be levied in any one year without such vote by the adoption of a resolution by at least four-fifths of the members of the board of directors, such amount not, however, to exceed the sum of seventy-five thousand ($75,000) dollars." [Stats. 1911, p. 1111.] It is under this proviso that the district asserts the right to levy the assessment in question. The language quoted clearly authorizes the levy of an assessment for the general purposes of the district. It is argued by the appellant that section 59, read in conjunction with other provisions of the act, provides that any resolution levying such assessment must be preceded by an estimate and determination of the amount of money necessary to be raised, and must specify the amount of money proposed to be raised and the purpose for which it is intended to be used. We need not determine whether the act should be construed in the manner thus claimed. Certainly these requirements, if they be requirements of the act, are matters which might have been omitted by the legislature without infringing constitutional rights. The failure to observe them, therefore, constitutes an irregularity which, under the views hereinabove expressed, cannot be availed of by an assessment payer who has failed to bring his action within the period of thirty days limited by section 69 of the act.

The same answer applies to the suggestion of appellants that the assessment was levied (according to the recital of the minutes) by a mere motion rather than by a resolution. Assuming that there is any substantial difference between a motion and a resolution, this point is no longer available to the appellants.

Without specifying other objections to the levy of the assessment, it may be said that they are all of such character as to be cured by the sections fixing a specific procedure and a period of limitation for attacks upon assessments.

Other objections based on proceedings had after the levy of the assessment are also urged by the appellants. The complaint contained no offer to pay the amount justly due. "It is now firmly settled by our decisions that where a property owner applies for equitable relief against the public authorities, as, for example, to restrain proceedings for the

collection or enforcement of taxes assessed against it, or to enjoin the execution of a tax deed, or to cancel a lien or charge for taxes, of record against his land, and it appears that all or some part of the tax charged is justly and equitably due from the plaintiff, or chargeable upon the land, he must, as a condition of obtaining such relief, first pay or offer to pay the amount justly due, or he must be required to do so before the relief to which he shows himself entitled is given.'' (*Holland* v. *Hotchkiss,* 162 Cal. 366, 370, [L. R. A. 1915C, 492, 123 Pac. 258]; *Couts* v. *Cornell,* 147 Cal. 560, [109 Am. St. Rep. 168, 82 Pac. 194]; *Trippet* v. *State,* 149 Cal. 530, [8 L. R. A. (N. S.) 1210, 86 Pac. 1084]; *San Diego etc. Co.* v. *Cornell,* 150 Cal. 637, [89 Pac. 603]; *Johnson* v. *Canty,* 162 Cal. 391, [123 Pac. 263].)   The principle has been applied to an action to enjoin a sale of land for delinquent assessments of an irrigation district organized under the Wright Act, in force prior to the enactment of the statute here involved. (*Quint* v. *Hoffman,* 103 Cal. 507, [37 Pac. 514, 777].)   There being, as we have seen, a valid assessment upon the lands of appellants, the rule is properly applied to prevent any attack upon subsequent proceedings looking to the collection of the assessment.

The appellants complain of various rulings of the court sustaining objections to offers of evidence. With one possible exception, all of the evidence thus rejected related to irregularities in proceedings leading up to the levy of the assessment. Under the views already expressed regarding the effect of a failure by the assessment payer to bring his action within the time limited by section 69, the rulings were proper. The single point which may be excluded from this general statement is the assignment that the court erred in excluding evidence offered to show that the lands of the plaintiff were not described upon the assessment-book as required by section 35 of the act. The complaint alleged and the answer denied that there had been no such description. But the record does not show that the assessment-book was offered in evidence or that the appellant's counsel in asking questions relative to such book gave any intimation that he was seeking to show the insufficiency of the descriptions. The point now urged was not brought to the attention of the court below and there was no ruling of which the appellants may complain here.

It becomes unnecessary, therefore, to consider in detail the other points urged by the appellant. All of them are disposed of by what has been said.

The judgment and the order denying a new trial are affirmed.

Shaw, J., and Lawlor, J., concurred.