[Civ. No. 6436. Fourth Dist. Feb. 6, 1961.]

V. R. DENNIS CONSTRUCTION COMPANY, Respondent,
v. THE CITY OF SAN DIEGO et al., Appellants.

J. F. Du Paul, City Attorney, Alan M. Firestone, Chief Deputy, and W. E. Starke for Appellants.

Edwin L. Thacher for Respondent.

SHEPARD, J.—This is an appeal from a judgment holding invalid certain improvement proceedings leading to a contract for improvement of a portion of Myrtle Avenue and 39th Street in the city of San Diego.

The facts came to the trial court by stipulation, there being no dispute in respect thereto. For the purpose of the present controversy, they are substantially as follows: In a proceeding under the "Improvement Act of 1911" (Sts. & Hy. Code, § 5000 et seq.), plans, specifications, plats, maps and drawings were duly prepared showing the work to be done and the boundaries of the assessment district. The city engineer filed his estimate of $21,948.86 as the cost of doing the work, and all other proceedings preliminary to the passage of the resolu-

tion of intention by which the council declared its intention to order the improvement above referred to, were had and done as required by law. December 30, 1958, the city council passed and adopted said resolution of intention in the form and manner provided by law, and set February 3, 1959, as the date for hearing objections and protests. On February 3, 1959, only one property owner appeared to protest. He called attention to the fact that the plans had been so drawn that a curb was to be constructed completely across the westerly side of the intersection of the above named streets, thus cutting off access to the unimproved portion of Myrtle Street west of the intersection, and to property abutting thereon. The hearing of February 3 was continued to February 10, the protest was made in writing to conform with statute, and the hearing was again continued to February 17.

In the meantime the city engineer corrected the plans so as to eliminate the obstructing curb, leaving only the gutter and providing short-return segments on each corner of the westerly edge of the intersection so as to allow access to the unimproved portion of Myrtle Avenue. The engineer estimated the additional cost at $241.65. The plans and specifications as thus corrected were reapproved and the hearing was closed on said resolution of intention. The stipulation then goes on to provide as follows:

"3. That thereafter, in compliance with all of the requirements of the Improvement Act of 1911 and all applicable laws, proceedings were had which resulted in the awarding of the contract for the construction of the said public improvement to the petitioner in this action; thereafter, petitioner, under the provisions of Section 5266 of the Street[s] and Highways Code, being a section of the Improvement Act of 1911, as amended, commenced this action for the determination of the validity of the proceedings prior to the commencement of the work under and pursuant to said contract."

The trial court made findings of fact in exact accordance with the stipulation above referred to.

It is evident from reading the arguments advanced to the trial court, from the trial court's discussion, and from the treatment of the whole subject made by both sides and all attorneys in their briefs, that neither the parties hereto, nor the trial court itself, understood the stipulation to mean exactly and literally what it said. Obviously, if it was intended to mean literally what it said, i.e., that all proceedings there-

after were in compliance with law, the trial court's decision was unquestionably wrong and there would seem to be no occasion for attempted support of it on appeal.

In order that this appeal may not be a complete frustration to all parties, we will assume the additional facts represented to us on appeal to be what was really meant, that is, that after so correcting the plans, no further notice or hearing regarding such correction was given or had, as is provided for in sections 5232 and 5233 of the Streets and Highways Code, but that all other proceedings except the giving of such notice and the holding of such hearings were in accordance with the law.

Thus, there is presented for our decision only the single question of whether or not such contended defect was waived by failure of any property owner to file a protest, as is provided by section 5258.

Under the stipulation that all proceedings following the closing of the hearing on resolution of intention were in compliance with all provisions of law, we must assume that the amount of $241.65 is less than 10 per cent of the total estimated cost of the work, as determined by the successful bid. (See § 5234.) Mathematically, said estimated additional cost amounts to only slightly more than 1 per cent of the engineer's total estimate. The stipulation does not give the amount of the successful bid but, of course, it does say that all proceedings were according to law, so that if section 5234 applies at all we still do not need to know the amount of the successful bid. Actually, however, both sides have informed us on oral argument that the successful bid was approximately $19,000. Thus, it is clear both by argument and by accepting the stipulation at its face value that the limitations provided by section 5234, even if applicable, do not interfere.

From the foregoing statement of facts, it is obvious that the ultimately accepted bid was approximately $3,000 under the engineer's estimate. We can hardly avoid noticing that if the engineer's estimate was anywhere near correct, competition must have produced a very favorable bid. Nor can we avoid the knowledge that if these proceedings are held void, the improvement district owners under the steady price pressures of present-day construction may easily lose this advantage and with it several thousand dollars. Even if a similar bid was received, the expense, time and effort lost in complete reinstitution of the proceedings would probably far more than offset the cost of the correction ordered.

In attempting to solve the problem of the question presented, it is the duty of our courts to arrive at the true intent of the Legislature by what it said. A reasonable interpretation in accordance with the apparent purpose of the Legislature is a primary rule of interpretation. (*County of Alameda* v. *Kuchel*, 32 Cal.2d 193, 199 [3] [195 P.2d 17].) It should be reasonable, fair and harmonious with its manifest purpose and avoiding mischief or absurd consequences. (*Kennard* v. *Rosenberg*, 127 Cal.App.2d 340, 345 [4-5] [273 P.2d 839].) A liberal construction should be given and all doubts resolved in favor of the validity of the proceedings. (*Mathes* v. *City of Long Beach*, 121 Cal.App.2d 473, 477 [2] [263 P.2d 472].) In determining what is intended, the entire act must be viewed as a whole to achieve harmony, if possible. (*Wemyss* v. *Superior Court*, 38 Cal.2d 616, 621 [2] [241 P.2d 525].)

Section 5003 provides that the act shall be liberally construed in order to effectuate its purposes, and that ''No error, irregularity, informality, and no neglect or omission of any officer, in any procedure taken under this division, which does not directly affect the jurisdiction of the legislative body to order the work or improvement,'' shall invalidate such proceedings.

It is agreed by all parties concerned that the resolution of intention was duly published, posted and mailed, as required by law. No fault whatever is found with any of the proceedings up to the time of the hearing provided by such resolution. Under these circumstances, jurisdiction to carry out the Improvement Act proceedings is acquired. (*Woodill* v. *City of Glendale*, 208 Cal. 564, 565 [1] [282 P. 797]; *Rice* v. *Hanrahan Co.*, 210 Cal. 625, 634 [10] [293 P. 57].)

Sections 5258 and 5259 read as follows:

''5258. Notice of irregularity in proceedings. At any time within ten days from the date of the first publication of the notice of award of the contract, any owner of, or other persons having any interest in, any lot or land liable to assessment, who claims that any of the previous acts or proceedings relating to the work are irregular, defective, erroneous or faulty, may file with the clerk a written notice specifying in what respect the said acts and proceedings are irregular, defective, erroneous or faulty. The notice shall state that it is made pursuant to this section.

''5259. Waiver of objections. All objections to any act

or proceeding occurring prior to the time within which such objections are permitted to be filed in relation to the work, not made in writing and in the manner and at the time specified, shall be waived, if the resolution of intention to do the work has been actually published, as provided in this division.''

Sections 5232 and 5233 provide that before ordering any changes made, the legislative body shall adopt a resolution describing the changes proposed, the amount of estimated increase or decrease in cost, and giving notice not less than 10 days before a hearing at which objections to the proposed changes may be heard and decided by the legislative body.

Section 5234 limits such changes to not more than 10 per cent of the engineer's total estimated cost of the work if the change is ordered prior to the award of contract, or if the change is ordered after the awarding of contract, not more than 10 per cent of the successful bid.

Section 5240 requires that before awarding any contract, the legislative body shall pass a resolution ordering the work. Sections 5241 to 5247 provide the procedure of advertising for bids and ultimate award of contract. Section 5248 requires the clerk to publish a notice of award of contract.

From an examination of the wording of sections 5258, 5259, 5234 and other sections and provisions of the act, it appears to us that the Legislature did not consider the notice and hearing provided by sections 5232 and 5233 as jurisdictional. First, it was careful to provide a 10 per cent limitation to increased cost. (§ 5234.) It next provided, under section 5248, for a notice of the award of the contract. Then it provided that at any time within 10 days from the date of first publication of the notice of the award of contract any owner or person having an interest in land liable to assessment can file a protest and that (§ 5259) failure to protest shall be deemed a waiver of all objections.

Our courts have already upheld the validity of section 5259 (formerly § 16 of the act), providing that failure to file a protest in accordance therewith is such waiver. (*Shepherd* v. *Chapin,* 45 Cal.App. 645, 651 [188 P. 571] ; *Garibaldi* v. *City of Daly City,* 63 Cal.App.2d 480, 484 [3, 4] [147 P.2d 122] ; *Noyes* v. *Chambers & De Golyer,* 202 Cal. 542, 545 [2] [261 P. 1006] ; *Hannon* v. *Madden,* 214 Cal. 251, 256 [1] [5 P.2d 4] ; *Blake* v. *City of Eureka,* 201 Cal. 643, 648 [2] [258 P. 945].) In *Watkinson* v. *Vaughn,* 182 Cal. 55, 58-59 [186 P. 753], the court elucidates the reasoning on this waiver section,

quoting from *Chase* v. *Trout,* 146 Cal. 350, 359 [80 P. 81], where the discussion on this point is summed up as follows:

" 'The correct proposition is, that as the legislature has power to devise any scheme for the assessment and levy of taxes for local improvements, provided such scheme includes such notice and opportunity for hearing to the owner of property taxed as will be sufficient to constitute the due process of law required by the constitution, and otherwise complies with constitutional limitations and restrictions, so the legislature, by a curative clause in the law establishing the scheme, may provide that the issuance of a bond, or the execution of a deed, in the enforcement of such levy or assessment, shall be conclusive evidence of the regularity of the performance of all the required steps in the proceeding, excepting those that are necessary to constitute the due process of law, or to comply with any other constitutional prerequisite. As to all these other statutory steps or acts, the same power which prescribes them is competent to declare that their non-observance shall not be fatal to the validity of the tax and that no inquiry may be made concerning them.' "

As was said in *Walker* v. *Van Valkenburgh,* 111 Cal.App. 538, 544 [295 P. 1068], quoting from *Rutledge* v. *City of Eureka,* 195 Cal. 404, 415 [234 P. 82]:

" 'This is a most comprehensive curative provision. It is more than a curative act. A curative act is retrospective. Here the same statute which prescribes certain requirements provides that failure to comply with such requirements shall not avoid the assessment. It is competent to provide in the law itself that a disregard of the provisions not essential to confer jurisdiction on the council to order the work may in turn be disregarded.' "

We cannot believe that the legislative language forces a construction to any such absurd result as would ensue should the present proceeding be held invalid. No property owner has protested or objected. In fact, one property owner has appeared in this proceeding and expended considerable time and effort to seek validation of the proceedings. The correction ordered was minor in character and was well within the general contemplation of the improvement, the notice of intention to perform which was fully given by publication, posting and mailing, respecting the original resolution of intention. Jurisdiction was thus acquired.

We are not required to pass on a change moving completely

outside the contemplation of the resolution of intention. In fact, it seems obvious that the correction was necessary to properly accomplish the real purpose encompassed by the proposed improvement. As it has been corrected it now perfects the very objects sought. Without the correction the improvement would have been defective. The contractor has no cause to complain, for his bid was on the improvement after the correction had been made. The procedure provided by sections 5248, 5258 and 5259 is for the benefit of the property owners, not the contractor. (*City of Susanville* v. *Lee C. Hess Co.*, 45 Cal.2d 684, 695 [14] [290 P.2d 520].)

It is suggested that sections 5232, 5233 and 5234 apply only to changes made after the resolution to do the work was adopted. Counsel have suggested that said sections might be jurisdictional as to those changes extending or reducing the boundaries of the district or ordering extensions of the work to include improvements entirely outside of the contemplation of the original improvement planned and noticed. We find it unnecessary to pass on these questions and do not do so.

What we do hold is that jurisdiction was acquired by the notice and hearing on the resolution of intention to form the district and cause the improvement to be made; that the particular correction here complained of was minor in character and was one well within the contemplation of the legislative intent in passing section 5259; that the failure of any property owner to object in accordance with section 5258 was a waiver of the claimed irregularity; and that the letting of the contract was valid.

The judgment is reversed with directions to the superior court to enter judgment for the city of San Diego.

Griffin, P. J., and Coughlin, J., concurred.