## GOODRICH *v.* DETROIT.

### ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 123.   Argued January 20, 1902.—Decided March 3, 1902.

Where a statute providing for the opening of streets requires notice to the parties whose land is to be taken for the street, the fact that it makes no provision for giving notice to the owners of land liable to be assessed for the improvement, does not deprive such owners of their property without due process of law, and is not otherwise obnoxious to the Fourteenth Amendment.

The interest of neighboring property owners, who may possibly thereafter be assessed for the benefit to their property accruing from opening a street, is too remote to require notice of such improvement, in which they have no direct interest.

No notice is required to be given to individual property owners of a resolution fixing an assessment district and levying a gross amount thereon for benefits, where the statute provides for a hearing in relation to the proportion each piece of property shall bear to the whole cost of the improvement, and an opportunity is given to the owner of the land to be heard upon the question of the benefit derived by him from the improvement.

The fact that certain parcels of land condemned for the improvement are defectively described, is no defence to a proceeding to assess benefits upon other property.

This was a bill in equity filed in the circuit court for the county of Wayne by Goodrich and another against the city of Detroit and its treasurer, to enjoin the defendants from enforcing the collection of certain taxes assessed upon several parcels of property owned by the plaintiffs, for benefits derived from the opening of Milwaukee avenue, upon the ground, amongst others, that such assessment was in violation of the Fourteenth Amendment, and deprived plaintiffs of their property without due process of law.

These proceedings were taken under the authority of certain sections of the Compiled Laws of 1897, c. 90, printed in the margin.[1]

---

[1] "Sec. 3394. The city, village or county clerk shall make and deliver to such attorney, as soon as may be, a copy of such resolution certified under seal, and it shall be the duty of such attorney to prepare and file in the name of the city, village or county, in the court having jurisdiction of the proceedings, a petition signed by him in his official character and duly verified by him; to which petition a certified copy of the resolution of the common council, board of trustees or board of supervisors shall be annexed, which certified copy shall be *prima facie* evidence of the action taken by the common council, board of trustees or board of supervisors, and of the passage of said resolutions. The petition shall state, among other things, that it is made and filed as commencement of judicial proceedings by the municipality or county in pursuance of this act to acquire the right to take private property for the use and benefit of the public, without consent of the owners, for a public improvement, designating it, for a just compensation to be made. *A description of the property to be taken shall be given,* and generally the nature and extent of the use thereof that will be required in making and maintaining the improvement shall be stated and *also the names of the owners and others interested in the property, so far as can be ascertained, including those in possession of the premises.* The petition shall also state that the common council or board of trustees or board of supervisors has declared such public improvement to be necessary and that they deem it necessary to take the private property described in that behalf for such improvement for the use or benefit of the public. *The petition shall ask that a jury be summoned and empaneled to ascertain and determine whether it is necessary to make such public improvement, whether it is necessary to take such private property as it is proposed to take, for the use or benefit of the public, and to ascertain and determine the just compensation to be made therefor.* The petition may state any other pertinent matter or things and may pray for any other or further relief to which the municipality or county may be entitled within the objects of this act.

The proceedings in the case were substantially as follows : On November 14, 1893, a resolution was passed by the common council providing for the opening and extending of Milwaukee avenue, and on January 6, 1894, a petition by the city was filed in the recorder's court, together with a map or plan of the private property proposed to be taken, certified as correct by the city engineer.   The owners and persons interested in the real estate proposed to be taken were duly summoned ; a jury impanelled, a hearing had, and a verdict rendered condemning certain lands, and fixing the total amount of damages at $15,214.75.   This verdict was confirmed by the court.

Thereafter, and on August 7, 1894, a resolution was adopted by the common council, which was rescinded on November 20, and on January 22, 1895, another was adopted of which the following is a copy :

" Resolved, that the said common council of the city of Detroit do hereby fix and determine that the following district and portion of said city of Detroit, to wit : (Here follows list of descriptions, many of which are different from those in first assessment district) is benefited by the opening of Milwaukee avenue, from Chene street to the easterly city limits, where not already opened.   And further resolved, that there be assessed and levied upon the several pieces and parcels of real estate included in the above descriptions, the amount of $15,214.75, in proportion, as near as may be, to the advantage which each

---

" SEC. 3395. *Upon receiving such petition, it shall be the duty of the clerk of said court to issue a summons against the respondents named in such petition,* stating briefly the object of said petition, and commanding them, in the name of the people of the State of Michigan, to appear before said court, at a time and place to be named in said summons, not less than twenty nor more than forty days from the date of the same, *and show cause, if any they have, why the prayer of said petition should not be granted.*

" SEC. 3399. *The jury shall determine in their verdict the necessity for the proposed improvement and for taking such private property for the use or benefit of the public for the proposed improvement and in case they find such necessity exists they shall award to the owners of such property and others interested therein such compensation therefor as they shall deem just,"* etc.

Section 3406, which is also pertinent, is reprinted in full in *Voigt* v. *City of Detroit, ante,* p. 115.

lot or parcel is deemed to acquire by this improvement. And further resolved, that the board of assessors of the city of Detroit be, and they are hereby, directed to proceed forthwith to make an assessment roll in conformity with the requirements of the charter of the city of Detroit relating to special assessments for collecting the expense of public improvements when a street is graded, comprising the property hereinbefore described, upon which they shall assess and levy the amount of $15,214.75, each lot or parcel to be assessed a ratable proportion, as near as may be of said amount, in accordance to the amount of benefit derived by such improvements."

On March 12, 1895, the assessors reported an assessment roll for defraying the expenses of opening the avenue, which was affirmed by the common council April 4, 1895. The property of plaintiffs was included in the assessment district, which was fixed and determined by the common council.

Defendants filed an answer, which was a little more than a demurrer to the bill, and upon hearing upon pleadings and proofs the bill was dismissed, an appeal taken to the Supreme Court, by which the decree of the circuit court was affirmed. 123 Mich. 559.

*Mr. Elbridge F. Bacon* for plaintiffs in error.

*Mr. Timothy E. Tarsney* for defendants in error.

MR. JUSTICE BROWN delivered the opinion of the court.

This case raises the question whether certain proceedings taken under the Compiled Laws of Michigan for the assessment of benefits upon neighboring lots derived from the opening of Milwaukee avenue, in the city of Detroit, deprived the owners of such lots of their property without due process of law.

These proceedings began with a resolution of the common council declaring the necessity of opening the street. Thereupon the city petitioned the recorder's court for a jury to determine the necessity of such improvements and of taking

private property, (a map or plan of which was annexed to the petition,) and " to ascertain and determine the just compensation to be made for such private property proposed to be taken," and for the issue of a summons to all persons mentioned in the petition as being interested in the property proposed to be taken. The jury returned a verdict in favor of the necessity of opening the avenue, of taking private property therefor, and fixed the compensation at the aggregate sum of $15,214.75.

Thereupon the common council passed another resolution fixing the district benefited by the opening, and declaring that there should be assessed upon the real estate included in such district the sum of $15,214.75, "in proportion, as near as may be, to the advantage which each lot or parcel is deemed to acquire by this improvement." The resolution further required the board of assessors to make an assessment roll to that amount, assessing upon each lot " a ratable proportion, as near as may be, of said amount in accordance to the amount of benefit derived by such improvements." Thereupon the matter was referred to the board of assessors, who reported the amount assessed against each lot. The bill averred that none of the plaintiffs' land thus assessed abutted upon those parts of the street opened by these proceedings, but that they had already dedicated to the city all that portion of Milwaukee avenue lying in front of their lands, without cost or expense to the city.

Plaintiffs made a large number of objections to the validity of such assessment, none of which require to be noticed, except so far as they are pertinent to the provision of the Fourteenth Amendment, concerning due process of law.

1. The first of these objections is that while the statute provides for a notice to the parties whose land is to be taken for the street, no provision is made for giving notice to the owners of the land liable to be assessed for the improvement. Section 3394 provides for the filing of a petition by the city attorney for the condemnation of land, and that the petition, among other things, shall contain " a description of the property to be taken, . . . also the names of the owners and others interested in the property, so far as can be ascertained, including those in

possession of the premises." Section 3395 provides that, "upon receiving such petition, it shall be the duty of the clerk of said court to issue a summons against those named in such petition," that is, all interested in the property to be taken, "commanding them, . . . to show cause, if any they have, why the prayer of such petition should not be granted."

It will be observed that this section makes no express provision for notice to the owners of property *not* to be taken, but *assumed to be benefited* by the improvements. These owners, however, are not then known, because the proceedings for the condemnation of the property taken precedes the determination of the benefits and the fixing of the assessment district. The sections of the statute taken together provide for two distinct and separate proceedings : (1) for the assessment of compensation for property *taken*, and (2) for the assessment of benefits to property *not* taken. In the former, only the owners of the land taken are interested. *Their* rights are amply protected by sections 3394 and 3395, requiring notice to be given to show cause why the petition should not be granted.

The argument of the plaintiffs is that the owners of the property liable to be assessed for the *benefits* are just as much interested in the question as to the necessity of making the improvement and the amount of compensation as are the owners of land to be taken for such improvement, and the same reasons for notice apply in the one case as in the other. A number of cases are cited which, it is argued, give countenance to this position. *Paul v. Detroit*, 32 Mich. 108; *Commissioners v. Fahlor*, 132 Ind. 426; *The State v. Fond du Lac*, 42 Wis. 287; *Stuart v. Palmer*, 74 N. Y. 183; *Scott v. Toledo*, 36 Fed. Rep. 385.

But whatever weight be given to these authorities, the law in this court is too well settled to be now disturbed, that the interest of neighboring property owners, who may possibly thereafter be assessed for the benefit to their property accruing from opening a street, is too remote and indeterminate to require notice to them of the taking of lands for such improvement, in which they have no direct interest. The position of the plaintiffs in this particular would require a readjustment of

the entire proceedings, and a determination of the property incidentally benefited, before any proceedings are taken for the condemnation of land directly taken or damaged by such improvement. It might be argued upon the same lines that, whenever the city contemplated a public improvement of any description, personal notice should be given to the taxpayers, since all such are interested in such improvements and are liable to have their taxes increased thereby. It might easily happen that a whole district or ward of a particular city would be incidentally benefited by a proposed improvement, as, for instance, a public school, yet to require personal notice to be given to all the taxpayers of such ward would be an intolerable burden. Hence it has been held by this court that it is only those whose property is proposed to be *taken* for a public improvement that due process of law requires shall have prior notice.

Thus in *Spencer* v. *Merchant*, 125 U. S. 345, it was held that, if a state legislature direct the expense of laying out a street to be assessed upon the owners of lands benefited thereby, and also determine the whole amount of the tax and what lands are, in fact, benefited, and provides for notice to and hearing of each owner, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of property without due process of law. Said Mr. Justice Gray (p. 356): "But the legislature has the power to determine, by the statute imposing the tax, what lands, which might be benefited by the improvement, are in fact benefited; and if it does so, its determination is conclusive upon the owners and the courts, and the owners have no right to be heard upon the question whether their lands are to be benefited or not, but only upon the validity of the assessment, and its apportionment among the different parcels of the class which the legislature has conclusively determined to be benefited." So, in *Parsons* v. *District of Columbia*, 170 U. S. 45, it was held that an enactment by Congress that taxes levied for laying water mains in the District of Columbia should be at a certain rate per front foot against all lots or lands abutting upon the street in which the main should be laid, was conclusive alike

of the necessity of the work and of its benefit to all abutting property. So, also, it was said in *Williams* v. *Eggleston,* 170 U. S. 304, 311 : "Nor can it be doubted that, if the state constitution does not prohibit, the legislature, speaking generally, may create a new taxing district, determine what territory shall belong to such district, and what property shall be considered as benefited by a proposed improvement. And in so doing it is not compelled to give notice to the parties resident within the territory or permit a hearing before itself, one of its committees, or any other tribunal, as to the question whether the property so included within the taxing district is in fact benefited." Cooley on Taxation, 2d ed. p. 149.

This question, however, is decided in the case of *Voigt* v. *Detroit City, ante,* p. 115, recently disposed of, and will not be further considered here. Indeed, so far as this question is concerned, this case might be affirmed upon the authority of that.

2. The second objection is that the resolution of January 22, 1895, fixing the assessment district and levying a gross amount thereon for benefits, does not expressly state that the property included therein is benefited to the amount ordered to be assessed. This resolution was passed in pursuance of section 3406, reprinted in the *Voigt* case, (*ante,* p. 115,) which provides that "if the common council . . . believe that a portion of the city . . . will be benefited by such improvement, they may . . . determine that the whole or any just proportion of the compensation awarded by the jury shall be assessed upon the owners or occupants of real estate deemed to be thus benefited and thereupon they shall by resolution fix and determine the district or portion of the city . . . benefited, and specify the amount to be assessed upon the owners or occupants of the taxable real estate therein. The amount of the benefit thus ascertained shall be assessed upon the owners or occupants of such taxable real estate, in proportion, as nearly as may be, to the advantage which such lot, parcel or subdivision is deemed to acquire by the improvement."

The resolution declares that the " common council do hereby fix and determine that the following district . . . is benefited by the opening of Milwaukee avenue," . . . and " that

there be assessed and levied upon the several pieces and parcels of real estate, included in the above description, the amount of $15,214.75, in proportion, as near as may be, to the advantage which each lot or parcel is deemed to acquire by this improvement." If this resolution be not a literal, we think it is a substantial, compliance with the statute, declaring that if the common council *believe* that the property will be benefited by such improvement, they may determine the proportion of the compensation to be assessed upon the owners; but whether this be so or not, there was no want of due process of law within the Fourteenth Amendment, inasmuch as section 3406 expressly provides, following the language already quoted, "that the assessment shall be made and the amount collected in the same manner and by the same officers and proceeding, as near as may be, as is provided in the charter of the municipality for assessing, levying and collecting the expense of a public improvement when a street is graded." Interpreting this, the Supreme Court of Michigan held in the case of *Voigt* v. *The City of Detroit*, 123 Mich. 547, that "the statute provides for a hearing in relation to the proportion each piece of property shall bear to the whole cost of the improvement;" and further, that "when the proceeding has reached that stage when it becomes necessary to decide what proportion of the cost of a proposed improvement shall be assessed to any given description of land, there must be an opportunity given to the owner of the land to be heard upon that question." There was, in that case, as well as in the one under consideration, no claim in the bill that plaintiffs' property was not benefited by the proposed improvement in excess of the amount assessed, nor was there any claim that he was not allowed to be heard in relation to the amount which should be assessed against his property. Upon such hearing the property owner may insist that his property was not benefited to the amount assessed, or that it was not benefited at all, and thus obtain every advantage which he might obtain were he informed of every step of the proceedings. The terms of the resolution, that each lot shall be assessed "in accordance with the amount of benefits derived from such improvements," opens the whole question of the amount of benefit derived by

the lot, even to showing that no benefit whatever was occasioned by the improvement. It does not follow, however, that he has a right to be heard upon the extent of the territory to be embraced within the assessment district.

3. The last objection, that there were several of the parcels of land constituting the extension of Milwaukee avenue so defectively described that the judgment of condemnation was absolutely void, is untenable. Not only is it not shown that the plaintiffs were interested in the lands alleged to be misdescribed, but it is obviously impossible, in a proceeding to assess benefits upon other property, to show a misdescription in the lands taken for such improvement. *Voorhees* v. *Bank of United States,* 10 Pet. 449; *Comstock* v. *Crawford,* 3 Wall. 396. It is not only an attempt to raise the question collaterally by one who has no interest in it, but it is exceedingly doubtful if a simple misdescription involves any Federal question whatever. The errors, too, were merely clerical, since a map of the property taken, annexed to the condemnation proceedings, exhibits accurately the lands affected thereby.

There was no error in the decree of the Supreme Court affirming the dismissal of the bill, and it is therefore

*Affirmed.*

MR. JUSTICE HARLAN did not sit in this case.